UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

KEVIN D. HARDWICK,

        Plaintiff,                        Case No. 2:18-cv-1185
                                               JUDGE EDMUND A. SARGUS, JR.
v.                                               Chief Magistrate Judge Elizabeth A. Deavers

3M COMPANY, *et al*.,

        Defendants.

### OPINION AND ORDER

This matter is before the Court on Defendants Archroma Management LLC's and Daikin Industries, LTD's Motion to Reconsider Denial of Motions to Dismiss for Lack of Personal Jurisdiction (ECF No. 131), Plaintiff's Memorandum in Opposition (ECF No. 133), and Defendants' Reply in Support (ECF No. 140). For the reasons that follow, the Court **DENIES** Defendants' Motion.

**I.**

Plaintiff Kevin D. Hardwick filed this action against 3M Company, E. I. du Pont de Nemours and Company, the Chemours Company, Archroma Management L.L.C. ("Archroma"), Arkema, Inc. ("Arkema America"), Arkema France, S.A. ("Arkema France"), Daikin Industries Ltd. ("Daikin Industries"), Daikin America, Inc., Solvay Specialty Polymers, USA, LLC, and AGC Chemicals Americas, Inc. This case focuses on "PFAS," which are man-made chemicals described by the United States Environmental Protection Agency as follows:

> Per- and polyfluoroalkyl substances (PFAS) are a group of man-made chemicals that includes PFOA, PFOS and GenX chemicals. Since the 1940s, PFAS have been manufactured and used in a variety of industries around the globe, including in the United States. PFOA and PFOS have been the most extensively produced and studied of these chemicals. Both are very persistent in the

environment and in the human body.  Exposure to certain PFAS can lead to adverse human health effects.

https://www.epa.gov/pfas/pfas-what-you-need-know-infographic

Mr. Hardwick alleges that he and others in Ohio and the nation have potentially dangerous amounts of PFAS in their blood.  He brings claims for negligence, battery, conspiracy, and declaratory judgment.  Mr. Hardwick asks for equitable relief in the form of a panel of scientists to study the effects that the PFAS has in his body and for medical monitoring as part of that relief.

Defendants moved jointly to dismiss this case in its entirety for failure to state a claim upon which relief can be granted and for lack of subject matter jurisdiction (ECF Nos. 67, 83), and each Defendant moved separately for dismissal based on lack of personal jurisdiction (ECF Nos. 68, 69, 71, 72, 73, 82, 84, 113).  After these motions were filed, Plaintiff amended the complaint and the parties jointly moved to apply the motions to dismiss to the Amended Complaint.  (ECF No. 101.)  The Court ordered oral argument on these motions, which was held on August 27, 2019.  (Transcript, ECF No. 126.)

On September 30, 2019, the Court issued a decision denying all of Defendants' Motions to Dismiss.  (Op. & Order, ECF No. 128.)  In its analysis of personal jurisdiction, the Court set forth the following standard:

> When faced with a motion to dismiss under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a plaintiff bears the burden of proving personal jurisdiction exists over each defendant. *CompuServe Inc. v. Patterson,* 89 F.3d 1257, 1262-63 (6th Cir. 1996). "[A] motion to dismiss brought under Fed. R. Civ. P. 12(b)(2) may be heard and determined before trial, but [] the court has the power to defer hearing of evidence and a ruling on the motion until trial." *Serras v. First Tennessee Bank Nat. Ass'n*, 875 F.2d 1212, 1213–14 (6th Cir. 1989). "As there is no statutory direction for procedure upon an issue of jurisdiction, the mode of its determination is left to the trial court." *Id*. (quoting *Gibbs v. Buck*, 307 U.S. 66, 71–72 (1939)).

>If a trial court "decides that the motion can be ruled on before trial," and "rules on the motion without an evidentiary hearing, the plaintiff need only make a 'prima facie' case that the court has personal jurisdiction." *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012). In other words, "[t]he court need only find that plaintiff has set forth specific facts that support a finding of jurisdiction in order to deny the motion to dismiss." *Kroger Co. v. Malease Foods Corp.*, 437 F.3d 506, 510 (6th Cir. 2006); *see also Neogen Corp. v. Neo Gen Screening, Inc.,* 282 F.3d 883, 887 (6th Cir. 2002) (stating that a plaintiff may make a prima facie showing by "establishing with reasonable particularity sufficient contacts between [the defendants] and the forum state to support jurisdiction").
>
>In deciding a Rule 12(b)(2) motion to dismiss, the Court is to "construe the facts in the light most favorable to the non-moving party." *Id*. The Court "will not consider facts proffered by the defendant that conflict with those offered by the plaintiff." *Id*. This refusal to weigh the defendants' controverting assertions is necessary "to prevent non-resident defendants from avoiding jurisdiction simply by filing an affidavit that denies all jurisdictional facts." *Compuserve,* 89 F.3d at 1262 (citing *Theunissen,* 935 F.2d at 1459).

*Id*. at 23–24.

No party asked for an evidentiary hearing, instead requesting that the Court decide the Motions to Dismiss for Lack of Subject Matter Jurisdiction on the written submissions. The Court chose to resolve the motions on the written submissions as the parties requested.

In support of their jurisdictional motions, four Defendants, Archroma, Daiken Industries, Arkema America, and Arkema France, filed declarations that they contended factually challenged the personal jurisdictional allegations in the Amended Complaint. (ECF Nos. 69-1, 82-1, 84-1, 84-2.) These four Defendants argued that once they submitted these declarations the burden on Plaintiff was no longer one of setting forth a prima facie case, but instead "in the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (citing *Weller v. Cromwell Oil Co.,* 504 F.2d 927, 930 (6th Cir. 1974)). This Court disagreed with these Defendants' application of

3

this law and therefore denied Defendants' Motions to Dismiss for Lack of Subject Matter Jurisdiction.

Two of the four Defendants who submitted declarations controverting the personal jurisdiction allegations, Archroma and Daikin Industries ("Moving Defendants"), now request reconsideration of the part of that decision that denied their Motions to Dismiss for Lack of Personal Jurisdiction (ECF Nos. 69, 82.) That Motion for Reconsideration is now ripe for review. (ECF Nos.133, 140.)

## II.

Although the Federal Rules of Civil Procedure do not explicitly address motions for reconsideration of interlocutory orders, the authority for a district court to hear such motions is found in both the common law and in Rule 54(b) of the Federal Rules of Civil Procedure. *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 Fed. Appx. 949, 959 (6th Cir. 2004). A district court's authority to reconsider its previous orders has been recognized to afford such relief as justice requires. *Id.* 952; *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1983) ("every order short of a final decree is subject to reopening at the discretion of the district judge"); *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991) ("District courts have inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment.").

Traditionally, courts will find justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence available; or, (3) a need to correct a clear error or prevent manifest injustice. *Rodriguez,* 89 Fed. Appx. at 959 (citing *Reich v. Hall Holding Co.*, 990 F. Supp. 955, 965 (N.D. Ohio 1998)). The Moving Defendants contend here that the third factor is implicated.

4

**III.**

The Moving Defendants posit that this Court committed clear error in denying their Motions to Dismiss for Lack of Personal Jurisdiction, summarizing as follows:

> *First*, each company [in its declarations filed in support of their Motions to Dismiss] has expressly denied engaging in any activities over the past 40 years that might give rise to personal jurisdiction. *Second*, the Court misapplied Sixth Circuit law governing how Rule 12(b)(2) motions must be considered; controlling precedent prohibits a plaintiff from relying solely on unsworn pleadings when faced with declarations filed by the defendant that controvert jurisdictional allegations. *Third*, the Court erroneously concluded, again contrary to clear Sixth Circuit law, that simply placing a product into the stream of commerce, in the absence of any additional contacts with the forum state,

(Mot. for Reconsideration at 4, ECF No. 131.)

In his memorandum in opposition, Plaintiff, *inter alia*, contends that the Moving Defendants' position "is a misstatement of Sixth Circuit law regarding Mr. Hardwick's burden in response to a motion to dismiss for lack of personal jurisdiction." (Pl's Mem. in Opp. at 6, ECF No. 133.) Plaintiff argues, as the Court held in its decision, that on a motion under Rule 12(b)(2) decided without discovery or an evidentiary hearing, "the plaintiff need only make a 'prima facie' case that the court has personal jurisdiction." *Id*. at 6. Plaintiff maintains that this Court appropriately determined that he had met his burden of making a prima facie showing of personal jurisdiction over the Moving Defendants in his Amended Complaint. This Court agrees.

**A.  Declarations from Moving Defendants and Burden on Plaintiff**

The Moving Defendants combine their first two arguments which both relate to their submission of declarations that allegedly controverted Plaintiff's jurisdictional allegations. The Moving Defendants state that, "[a]ccording to the Court, it was enough to rely on allegations set forth in the Amended Complaint, notwithstanding the fact that Mr. Hardwick did not submit any

affidavit or other evidence in response to the companies' declarations." (Mot. for Reconsideration at 4, ECF No. 131.) They clarify that "[t]his Court held, in other words, that Hardwick's allegations from his Amended Complaint (and restated in his brief) neutralized the moving defendants' sworn declarations, at least at this stage of the case." *Id*. at 6.

The Moving Defendants are correct that this Court did not weigh their declarations against the allegations of Amended Complaint. As it indicated in its decision, this Court did not find that the declarations sufficiently disclaimed jurisdiction, but that even if they did sufficiently disclaim personal jurisdiction they did not change Plaintiff's burden, which was met by setting forth a prima facie case of jurisdiction in the Amended Complaint. Specifically, the Court stated:

> But even if the declarations did factually challenge any conduct that would be sufficient for this Court to exercise personal jurisdiction over them, the Court is not permitted to "weigh the controverting assertions of the party seeking dismissal." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996). In reversing and remanding the district court's finding of lack of personal jurisdiction in *CompuServe, Inc. v. Patterson*, the Sixth Circuit pointed out that "[a]t various points in its consideration of the case, however, the district court expressly relied on Patterson's affidavit." *Id*. The court went on to explain that "we want 'to prevent non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts.'" *Id*.

(Op. & Order at 34–35, ECF No. 128.)

With regard to the Court's above explanation, the Moving Defendants argue that the "stray language in *CompuServe* or cases like it" does not "implicitly overrule the Sixth Circuit's 45-year-old rule that a plaintiff must come forward with evidence in the face of a defendant's jurisdiction-refuting declaration." (Mot. for Reconsideration at 5, ECF No. 131.) In their Reply brief, the Moving Defendants restate their conclusion that this "Court improperly credited mere allegations of personal jurisdiction over Defendants' sworn declarations showing that no jurisdiction exists. . . . [and] [t]his Court did so despite Sixth Circuit precedent dating back 50

6

years holding that when defendants 'submit[] affirmative evidence showing that the court lacked jurisdiction over [them], mere allegations of jurisdiction are not enough" to establish jurisdiction, even at the pleading stage.'"  (Defs' Reply at 1, ECF No. 140) (citing *Parker v. Winwood*, 938 F.3d 833, 839–40 (6th Cir. 2019). The Moving Defendants, however, are mistaken.

In a published opinion issued last week, the Sixth Circuit clarified the exact issue the Moving Defendants highlight in their Motion for Reconsideration.  In *Malone v. Stanley Black & Decker, Incorporated*, 19-3880, -- F.3d --, 2020 WL 3989601 (6th Cir. July 15, 2020), a Taiwanese defendant, Rexon, moved for dismissal under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction.  As did the Moving Defendants here, Rexon submitted an affidavit controverting the plaintiffs' jurisdictional allegations made in their complaint, averring, for example that Rexon "has never engaged in any marketing effort specifically targeting Ohio and it does not have offices, agents, or property in the state"; and Rexon "has never entered into any contract in the State of Ohio," nor does it "dictate to Sears where Sears should sell products." *Id*. at *4.  The district court credited these affidavits and granted the 12(b)(2) motion.  The Sixth Circuit reversed and remanded, holding that the trial court committed reversable error by crediting the sworn declaration.

In its analysis, the Sixth Circuit first set forth the standard, relying on the same exact language upon which the Moving Defendants rely here:

### C. Burden Shifting

> Motions to dismiss under Rule 12(b)(2) involve burden shifting. The plaintiff must first make a prima facie case, which can be done merely through the complaint. *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988). The burden then shifts to the defendant, whose motion to dismiss must be properly supported with evidence. *Theunissen*, 935 F.2d at 1458. Once the defendant has met the burden, it returns to the plaintiff, who may no longer "stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Id.*

7

*Malone*, 2020 WL 3989601, at *3.

The *Malone* court summarized that the submitted "affidavit averred that Rexon has not done many of the things that we look to when assessing purposeful availment." *Id*. at *4 (citing *Asahi Metal Indus. Co. v. Superior Ct.,* 480 U.S. 102, 112 (1987) (O'Connor, J.) (plurality op.); *Bridgeport Music, Inc. v. Still N The Water Pub.*, 327 F.3d 472, 480 (6th Cir. 2003) (endorsing Justice O'Connor's approach)). The appellate court stated that the district court "seems to have reached its conclusion" that there was no personal jurisdiction over Rexon based upon the supporting affidavit. *Id*. The *Malone* court then held:

> The affidavit, however, was irrelevant. A district court has discretion in how it resolves a 12(b)(2) motion. *Serras v. First Tenn. Bank Nat. Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989). "If it decides that the motion can be ruled on before trial, the court 'may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion.'" *Id.* (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2nd Cir. 1981)). The court's choice affects the plaintiff's burden. *Id.* If the court holds an evidentiary hearing and the defendant's motion is properly supported with evidence, the plaintiff must overcome it by a preponderance of the evidence. *See Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998). But "[w]hen the district court 'rules on written submissions alone' the burden consists of 'a prima facie showing that personal jurisdiction exists.'" *Schneider*, 669 F.3d at 697 (quoting *Serras*, 875 F.2d at 1214).
>
> Here, the court chose to resolve the motion on the written submissions. The Malones thus needed only to make a prima facie showing, which, as we have already explained, they did through their complaint. Although Rexon provided an affidavit that in some ways cut against jurisdiction, the district court's choice of procedure made that affidavit irrelevant. *Cf. Palnik v. Westlake Entm't, Inc.*, 344 F. App'x 249, 251 (6th Cir. 2009). As we have explained:
>
>> [T]his rule prevents a defendant from "defeating personal jurisdiction merely by filing a written affidavit contradicting jurisdictional facts alleged by a plaintiff" while simultaneously allowing a defendant to "invoke the court's discretion to order a pretrial evidentiary hearing" and thereafter apply the more-exacting standard when a plaintiff's jurisdictional allegations are wholly unfounded.

8

> *Schneider*, 669 F.3d at 697 (quoting *Serras*, 875 F.2d at 1214).  Rexon did not request a hearing and the court did not hold one, which meant the Malones' prima facie burden did not change.  *See Dean*, 134 F.3d at 1272.  Yet the district court credited Rexon's affidavit and granted its motion without first allowing any form of discovery.  In doing so, the court erred.  *See Theunissen*, 935 F.2d at 1459; *see also Schneider*, 669 F.3d at 699 (recognizing the significance of whether discovery was allowed); *Int'l Techs. Consultants, Inc.,* 107 F.3d at 391 (same).

*Id*. at 4–5.

Similarly, in the instant action, the Moving Defendants did not request a hearing and the Court did not hold one, which meant Mr. Hardwick's prima facie burden did not change.  It would have been error for this Court to have credited the Moving Defendants' declarations, which under the posture of this case were irrelevant.

**B.     Minimum Contracts/ Purposeful Availment**

In the Moving Defendants' second argument in support of their request for reconsideration of this Court's denial of their Motions to Dismiss for Lack of Personal Jurisdiction, they contend that they are being unconstitutionally haled into this Court because they did not purposefully avail themselves of doing business in Ohio.  The Moving Defendants assert that because they merely placed a product into the stream of commerce, Plaintiff must meet a heightened burden referred to as a "stream of commerce plus."  (Mot. for Reconsideration at 12, ECF No. 131.)  The Moving Defendants contend that "the Sixth Circuit has made clear that simply alleging the defendant placed a product into the stream of commerce, without showing a specific intent to serve the forum's market, is insufficient."  *Id*. 10–11 (citing *Bridgeport Music, Inc. v. Still N the Water Publ'g*, 327 F.3d 472, 480 (6th Cir. 2003)).  The Moving Defendants maintain that "[n]owhere does Mr. Hardwick, his counsel, or this Court cite to any facts that would justify exercising jurisdiction under the "plus" factor.  Both companies submitted affidavits explicitly denying, *inter alia*, that they have had any contact with Ohio, such

9

as never having distributed, sold, or advertised PFAS products directly to Ohio consumers over the past 40 years." *Id*. at 12.

The Moving Defendants' arguments miss the mark. First, and again, the Moving Defendants improperly rely on affidavit testimony that is irrelevant at this point in the litigation. Additionally, when this Court considered the Moving Defendants' Motions to Dismiss, it determined that the allegations in the Amended Complaint made a prima facie showing of jurisdiction. The Court disagreed, and still does, that Plaintiff alleged only that the Moving Defendants placed a product in the stream of commerce. Here again, *Malone* is helpful.

In *Malone*, the court reviewed the complaint to determine whether it made a prima facie showing of personal jurisdiction. The court stated that "[t]he overriding question before us is whether Rexon 'possesses such minimum contacts with [Ohio] that the exercise of jurisdiction would comport with traditional notions of fair play and substantial justice.'" 2020 WL 3989601, at *3 (relying on *Beydoun v. Wataniya Rests. Holding, Q.S.C.*, 768 F.3d 499, 505 (6th Cir. 2014); *Int'l Shoe Co.*, 326 U.S. at 316)). In reversing the trial court, the Sixth Circuit indicated first that the trial court improperly relied on affidavits submitted controverting the jurisdictional allegations. Second, the court reviewed the complaint to determine if it sufficiently alleged a prima facie case of personal jurisdiction:

> Once again, the complaint is sparse on detail, but it did make what amount to three relevant allegations:
>
> > (1) Rexon is in the business of making, marketing, distributing, and selling table saws;
> >
> > (2) "Defendants" (which we take to include Rexon) "negligently manufactured, designed, assembled, distributed, sold, and otherwise furnished" the saw that injured Kevin Malone and failed to include with it adequate warnings to prospective users despite knowing of its dangers; and

10

> (3) The negligent defects in the design and manufacture, as well as the failure to include warnings, were proximate causes of the Malones' injuries.
>
> Paragraph four specifically alleged that Rexon "conducted business, entered into contractual relations, caused tortious injury, and otherwise established minimum contacts in the State of Ohio." The complaint does not state that Rexon directed its sales to Ohio, but that is not, on its own, determinative. *See Nicastro*, 564 U.S. at 885 (recognizing purposeful availment "will differ across cases" depending on the "defendant's conduct and the economic realities of the market the defendant seeks to serve").
>
> Taken together with the rest of the complaint, and in a light most favorable to the Malones, these allegations are enough to satisfy the "relatively slight" burden of a prima facie showing. *Am. Greetings Corp.*, 839 F.2d at 1169.

2020 WL 3989601, at *4.

Similarly, in the case *sub judice*, this Court reviewed the allegations made in the Amended Complaint and determined that, taking them together with the rest of the complaint, and in a light most favorable to Mr. Hardwick, the allegations were enough to satisfy the relatively slight burden of a prima facie showing. And, as can be seen from the quote below taken from this Court's decision on personal jurisdiction, the allegations set forth by Mr. Hardwick are not nearly as sparse as those that were found sufficient in *Malone*:

> In the Amended Complaint, Plaintiff refers to all of the named Defendants jointly. He alleges that "Defendants have each marketed, developed, distributed, sold, manufactured, released, trained users on, produced instructional materials for, and/or otherwise handled and/or used one or more PFAS materials, including in Ohio and this District, in such a way as to cause the contamination of Plaintiff's and the class members' blood and/or bodies with PFAS, and the resultant biopersistence and bioaccumulation of such PFAS in the blood and/or bodies of Plaintiff and other class members." (Am. Comp. ¶ 29 ECF No. 96.)
>
> Mr. Harwick further alleges that "Defendants manufacturing and/or using PFAS materials released such PFAS materials into the environment during, as a result of, or in connection with their manufacturing and other commercial operations, including into the air, surface waters, ground water, soils, landfills, and/or through their involvement and/or participation in the creation of consumer or other commercial products and materials and related training and instructional materials and activities, including in Ohio and this District, that Defendants knew,

11

foresaw, and/or reasonably should have known and/or foreseen would expose Plaintiff and the other class members to such PFAS." *Id*. ¶ 34.

The Amended Complaint provides a history of PFAS materials, which "were first developed in the late 1930s to 1940s and put into large-scale manufacture and use by the early 1950s." *Id*. ¶ 28. Plaintiff alleges that PFAS are unique chemicals because of their biopersistent and bioaccumulative qualities. The pleading contains allegations that PFAS cause significant adverse health effects, "including kidney cancer, testicular cancer, ulcerative colitis, thyroid disease, preeclampsia, and medially-diagnosed high blood pressure, high cholesterol and is known to cause permanent subcellular injuries." *Id*. ¶ 53.

Plaintiff alleges that each Defendant learned of various studies and data indicating that exposure to PFAS has significant negative impacts on human health, including "increased cancer incidence, hormone changes, lipid changes, and thyroid and liver impacts, which such Defendants' own scientists, lawyers, and advisors recommended be studied further to assess the extent to which PFAS exposures were causing those effects." *Id*. ¶ 43. Plaintiff further states that Defendants "knew and shared among themselves all relevant information relating to the presence, biopersistence, and bioaccumulation of PFAS in human blood and associated toxicological, epidemiological, and/or adverse health effects and/or risks." *Id*. ¶ 54.

Mr. Hardwick alleges that in spite of these studies and data and Defendants' knowledge of them, "Defendants repeatedly assured and represented" to "the United States Environmental Protection Agency ("USEPA") and other state and local public health agencies and officials" that exposures to PFAS "presented no risk of harm and were of no legal, toxicological, or medical significance of any kind." *Id*. ¶ 44.

Plaintiff additionally avers that, although Defendants were aware of the dangers and risks of PFAS, they not only withheld that information from the public and regulators, but that they also actively misled the public and regulators as to such dangers and risks. Mr. Hardwick alleges that Defendants made efforts to conceal this data and to manipulate public, regulatory and scientific perception and knowledge of the injurious nature of PFAS. Specifically, Plaintiff states that "Defendants, through their acts and/or omissions, controlled, minimized, trivialized, manipulated, and/or otherwise influenced the information that was published in peer-review journals, released by any governmental entity, and/or otherwise made available to the public relating to PFAS materials in human blood and any alleged adverse impacts and/or risks associated therewith, effectively preventing Plaintiff or the class members from discovering the existence and extent of any injuries/harm as alleged herein." *Id*. ¶ 58.

He further avers that "Defendants encouraged the continued and even further increased use and release into the environment of PFAS, including into Ohio

12

and this District, by their customers and others, including but not limited to through manufacture, use, and release, of aqueous fire-fighting foams containing or made with PFAS and/or emergency responder protection gear or equipment coated with materials made with or containing PFAS, and tried to encourage and foster the increased and further use of PFAS, including in Ohio and this District, in connection with as many products/uses/and applications as possible, despite knowledge of the toxicity, persistence, and bioaccumulation concerns associated with such activities." *Id*. ¶ 61.

Mr. Hardwick alleges that, although there is evidence and data to the contrary, "[t]o this day, Defendants deny that the presence of any PFAS in Plaintiff's or any class member's blood, at any level, is an injury or presents any harm or risk of harm of any kind, or is otherwise of any legal, toxicological, or medical significance"; they deny that "any scientific study, research, testing, or other work of any kind has been performed that is sufficient to suggest to Plaintiff or any class member that the presence of any PFAS material in their blood, at any level, is of any legal, toxicological, medical, or other significance"; that "Defendants, to this day, affirmatively assert and represent to governmental entities, their customers, and the public that there is no evidence that any of the PFAS found in human blood across the United States causes any health impacts or is sufficient to generate an increased risk of future disease sufficient to warrant diagnostic medical testing, often referring to existing studies or data as including too few participants or too few cases or incidents of disease to draw any scientifically credible or statistically significant conclusions." *Id*. ¶¶ 63–65.

Mr. Hardwick specifies that because "[t]here is no naturally-occurring 'background,' normal, and/or acceptable level or rate of any PFAS in human blood, as all PFAS detected and/or present in human blood is present and/or detectable in such blood as a direct and proximate result of the acts and/or omissions of Defendants." *Id*. ¶ 56. Plaintiff continues, averring that "Defendants have collectively reaped billions of dollars in profits from the acts and/or omissions that caused, permitted, allowed, and/or otherwise resulted in the PFAS contamination of Plaintiff's and the other class members' blood and/or bodies and resultant biopersistence and bioaccumulation of such PFAS in such blood and/or bodies." *Id*. ¶ 78.

Plaintiff alleges that the "presence, accumulation, toxic invasion, and/or persistence of PFAS in human blood, including that of Plaintiff and the other class members, is injurious and physically harmful and results in unwanted, unconsented-to, and deleterious alterations, changes, and/or other presently-existing physical injury and/or adverse impacts to the blood and/or bodies of Plaintiff and the other class members, including but not limited to subcellular injuries, including but not limited to biopersistence and bioaccumulation within the body." *Id*. ¶ 57.

(Op. & Order at 3–7, ECF No. 128.)

13

Comparing these allegations to the ones the Sixth Circuit found sufficient in *Malone* leaves no question that Mr. Hardwick set forth allegations sufficient to establish a prima facie case of personal jurisdiction.

## IV.

For the reasons discussed above, the Court **DENIES** the Moving Defendants' Motion for Reconsideration.  (ECF No. 131.)

**IT IS SO ORDERED.**


**8/3/2020**                                                    **s/Edmund A. Sargus, Jr.**
**DATE**                                                          **EDMUND A. SARGUS, JR.**
                                                                         **UNITED STATES DISTRICT JUDGE**