# EXHIBIT 10



1717 Dixie Highway, Suite 910 / Covington, Kentucky 41011-4704
Tel: 859.331.2838 / Fax: 513.381.6613
www.taftlaw.com

ROBERT A. BILOTT
859.547.4306
bilott@taftlaw.com

September 5, 2017

**CERTIFIED MAIL
RETURN RECEIPT REQUESTED**

Brenda Fitzgerald, M.D.
Director
Centers for Disease Control and
   Prevention
Administrator, Agency for Toxic
   Substances and Disease Registry
U.S. Department of Health & Human
   Services
1600 Clifton Road
Atlanta, GA 30329-4027

Scott Pruitt
Administrator
United States Environmental Protection
   Agency
William Jefferson Clinton Building
1200 Pennsylvania Ave., N.W.
Mail Code: 1101A
Washington, DC 20460

Patrick Breyese, Ph.D., CIH
Director
Agency for Toxic Substances and
   Disease Registry
Center for Disease Control
200 Independence Ave., S.W.
Washington, DC 20201

Jeff Sessions, Esq.
United States Attorney General
United States Department of Justice
950 Pennsylvania Ave., N.W.
Washington, DC 20530-0001

Re: Request for Coordinated Nationwide PFAS Health Study and Testing and Notice of Intent to Sue

Ladies and Gentlemen:

    Millions of people across the country have been exposed to highly fluorinated chemicals (per- and polyfluoralkyl substances, including PFOA and PFOS) collectively referred to as "PFAS," in their drinking water supplies. EPA acknowledged the risks posed by the entire family of PFAS in its "Long-Chain Perfluorinated Chemicals (PFCs) Action Plan," which was released over seven years ago, but has never been fully

Taft Stettinius & Hollister LLP     Chicago / Cincinnati / Cleveland / Columbus / Dayton / Indianapolis / Northern Kentucky / Phoenix

implemented. (*See* Ex. A (excerpts).) EPA has, however, recently confirmed that at least one PFAS – PFOA – poses sufficient "potential adverse effects for the environment and human health based on its toxicity, mobility, and bioaccumulation potential" to support investigating and addressing its presence in drinking water under the federal Superfund law, codified in the Comprehensive Environmental Response and Liability Act of 1980, as amended, 42 U.S.C. § 9601 *et seq.* ("CERCLA"). (*See e.g.*, Ex. B (excerpts) at 9.) Through the authority granted to ATSDR under that same Superfund law, ATSDR has classified PFAS as a class of chemicals that meet the definition of "toxic substance" within the scope of ATSDR's purview.[1] Consequently, ATSDR has developed a draft toxicological profile for PFAS, issued various statements and guidance to impacted individuals and physicians dealing with certain PFAS exposures, and even agreed to partner with a handful of state or local entities investigating specific instances of specific types of PFAS drinking water contamination in specific communities. (*See e.g.*, Ex. C.) To date, however, ATSDR has not embarked on any coordinated, comprehensive nationwide study or investigation of the impacts on human health from the presence of the entire *class* of PFAS in drinking water, or associated testing of all such impacted individuals. We write to request that ATSDR move forward immediately with such a national study and testing.

As explained below, ATSDR has the clear power and authority to mandate a national study of PFAS health impacts and associated testing, has access to mechanisms to secure funding from responsible parties, and has a proven model to follow to implement such a study/testing. Based on our past decade of experience designing and overseeing a project to assess human health impacts from one such PFAS – PFOA – we stand ready to assist ATSDR in overseeing the design and implementation of a nationwide study and testing focusing on the entire class of PFAS chemicals through a program that could encompass and involve all affected parties, including PFAS manufacturers, PFAS users, impacted water supplies, impacted residents, and affected governmental entities/contractors and regulators, in a way that provides everyone with independent, credible scientific answers and certainty.

I. **ATSDR Has The Authority To Require A National PFAS Health Study and Testing And Ability To Secure Full Funding For Such Work.**

Under Section 104 of CERCLA, ATSDR shall "provide medical care and testing to exposed individuals, including but not limited to tissue sampling, chromosomal testing where appropriate, epidemiological studies, or any other assistance appropriate under the circumstances" in situations involving "public health emergencies caused or believed to be caused by exposure to toxic substances." (42 U.S.C. § 9604(i)(1)(D).) This is a non-discretionary mandate. Thus, under this provision of CERCLA, ATSDR (which, as noted above, already has classified PFAS as a "toxic substance") is not only

---

[1] *See also* 42 U.S.C. § 9604(i)(18).

authorized to conduct epidemiological studies and testing in circumstances where there have been excessive PFAS exposures, but is required to do so.

EPA repeatedly has indicated that situations involving excessive levels of PFAS in drinking water qualify as public health emergencies mandating immediate alternate water supplies. For example, as early as 2002, EPA entered a consent order in which it found that levels of a PFAS (PFOA) exceeding the non-regulatory threshold used by EPA at that time presented a sufficient threat of "imminent and substantial endangerment" to warrant the provision "[a]s soon as practicable" of alternative drinking water to those exposed. (*See* Ex. D (excerpts).) EPA entered similar orders noting the threat of such "imminent and substantial endangerment" from excessive PFAS levels in drinking water, mandating immediate alternate drinking water supplies, after EPA adopted its first provisional health advisory guidelines for short-term exposures to two different PFAS materials (PFOA and PFOS) in 2009. (*See e.g.*, Ex. E (excerpts).) EPA reaffirmed this position as recently as January 2017 when it modified one of those same consent orders to require immediate clean water if levels of PFAS exceeded EPA's new long-term health advisory level of no more than 0.07 ppb for individual or combined levels of PFOA and PFOS. (*See* Ex. F.) EPA noted that these new, lower PFAS drinking water guidelines were based on EPA's review of "the best available peer-reviewed studies" indicating that exposure to these PFAS "may result in adverse health effects, including developmental effects to fetuses during pregnancy or to breastfed infants (e.g., low birth weight, accelerated puberty, skeletal variations), cancer (e.g., testicular, kidney) , liver effects (e.g., tissue damage), immune effects (e.g., antibody production and immunity), thyroid effects and other effects (e.g., cholesterol changes)." (Ex. G.)

ATSDR's actions to date confirm its recognition that studying PFAS contamination issues falls squarely within its broad authority. As recently as May 23 of this year, ATSDR released the results of its own assessment of whether an epidemiological study by the Agency of those exposed to PFAS contamination in their drinking water would be feasible. (Ex. H (excerpts).) ATSDR confirmed in the context of evaluating the feasibility of studying adverse health effects among the adults, children, and military personnel exposed to multiple PFAS compounds in drinking water at the Pease International Tradeport that undertaking such a study could generate important "scientific knowledge about the health effects of PFAS exposures, in particular, PFOS and PFHxS exposures," if the study could be designed to encompass a sufficiently large population of impacted people. (*Id.* at 2.) In order to properly and thoroughly study certain types of less common diseases (including cancer) associated with these PFAS exposures, ATSDR acknowledged that there would need to be far more than the couple hundred or even couple thousand anticipated study participants at that one site, which might be feasible if multiple sites were incorporated into the study. (*Id.* at 43.) ATSDR even listed over 100 sites identified to date across the country where PFOS and/or PFHxS have been confirmed to be present in drinking water at levels above EPA's reporting limit for the chemicals under EPA's Unregulated

Contaminant Monitoring Rule 3 ("UCMR-3"), which could provide the needed, larger pool of study participants. (*Id.* at Table A.1.)

## II. A Proven Model Exists For Developing A National PFAS Health Study.

Settlement of a prior class action lawsuit in which we represented the plaintiff class resulted in the creation of an independent scientific panel that studied the effects of PFOA-contaminated drinking water among a class of approximately 70,000 people whose drinking water supplies in West Virginia and Ohio had been contaminated with quantifiable levels of the chemical (0.05 ppb at the time) attributable to releases from the Washington Works manufacturing plant then-owned by E. I. du Pont de Nemours & Company ("DuPont"). Through an innovative settlement with DuPont in that case (known as the "*Leach* Case"), we were able to secure sufficient funds to pay for: 1) blood testing of approximately 69,000 people through a "C8 Health Project"; 2) creation of a new "C8 Science Panel" of independent, world-class epidemiologists charged with confirming which diseases were linked to PFOA exposure among the class being studied; 3) the design and implementation by the C8 Science Panel of approximately a dozen extensive epidemiological studies and retrospective exposure modeling work, including class-wide studies of the exposed population; 4) provisions for immediate and long-term clean water/water filtration; and 5) medical monitoring/testing for all class members for each disease linked to their PFOA exposure. (See http://www.c8sciencepanel.org and http://C-8MedicalMonitoringProgram.com.) Through that settlement, we also were able to secure a binding agreement up front on how the results of the independent scientific work would be used in connection with future injury and compensation claims among the *Leach* Case class members, including the extent to which the independent scientific work would conclusively resolve issues of general causation as between the PFAS chemical at issue and the class member exposures. The settlement also included an agreement that all active litigation among the parties would be stayed and future filings barred (yet with all claims preserved and statutes of limitations tolled), pending the final outcome of the agreed scientific process.

The work of the C8 Science Panel (and the related C8 Health Project) under this prior class settlement involved only one PFAS compound (PFOA) and only one responsible party (DuPont). There is no reason, however, why this same model cannot be expanded to the current situation facing communities across the United States involving one or more (or a combination of) the other PFAS compounds in their drinking water, potentially attributable to the actions of multiple responsible parties. In fact, expanding the model to include multiple responsible parties and regulators provides the opportunity for creating a much bigger pool of funds and the opportunity to spread costs among a much bigger and more diverse group. Likewise, addressing the issue within the context of a national class provides the opportunity for the responsible parties to fashion common, global remedies that allow for uniform, consistent relief and treatment of impacted parties and greater financial, scientific, and regulatory certainty.

ATSDR already has acknowledged the significance and utility of the C8 Science Panel/C8 Health Project model and work for addressing health issues related to PFAS exposures. As noted by ATSDR in its May 23, 2017, draft feasibility assessment for studies at the Pease International Tradeport, the C8 Science Panel's/C8 Health Project's work, which focused on human impacts from PFOA contamination in drinking water, allows ATSDR to focus future PFAS studies on the effects from exposure to other PFAS compounds, such as PFOS and PFHxS, and the synergistic/combined effects of multiple PFAS compounds (including PFOA) being present in drinking water at the same time. (*See* Ex. H at 3.) In short, the C8 Science Panel and C8 Health Project work allows ATSDR to start from what is already known and addressed by the C8 Science Panel and C8 Health Project with respect to the adverse effects of PFOA, and direct its resources toward studying the effects of having one or more (or combination) of the other PFAS materials in drinking water.

### III. Now Is The Time To Act.

It is imperative that ATSDR take action now to respond to this ongoing, imminent and substantial threat to the health of millions of Americans across this country. Every day, another community somewhere in the United States wakes up to news that one or more (or some combination) of an ever-expanding class of PFAS compounds (some being identified for the first time as even existing) are poisoning the drinking water that they and their families rely upon. Every day another community is being told not to drink its water or to immediately get on bottled water because the concentration of PFAS exceeds current EPA guidelines or other health benchmarks. Residents, water suppliers, local, state and national elected officials, governmental entities, NGOs, business leaders, scientists – all are demanding credible, scientific answers to exactly what this mix of PFAS compounds in the water will do to people over time– especially those who have had long term exposures over many years or may be in sensitive subpopulations, such as infants, the elderly, or the infirm. Recently, the leaders of the health departments in five states – New York, Michigan, Pennsylvania, New Hampshire, Vermont, and Alaska – all signed a joint letter specifically asking ATSDR to undertake a national PFAS health study. (Ex. I.) In the meantime, an ever-growing number of lawsuits are being filed by a variety of lawyers asserting a myriad of different claims and theories against multiple parties under varying state laws and standards.

ATSDR is uniquely endowed with the legal authority and ability to fashion a response that addresses this problem in a comprehensive, coordinated, national basis among all necessary parties. ATSDR also has the rare ability and power to require those deemed responsible for such PFAS contamination of the country's drinking water supplies, including any military or other governmental entities, to pay for and/or fund such work. (*See e.g.*, 42 U.S.C. §§ 9604(i)(5)(D), 9607(a)(4)(D).[2]) Given ATSDR's own recognition of the feasibility, importance, and need to study the effects of multiple PFAS

---

[2] *See also* 42 U.S.C §§ 9604(i)(17), 9620.

exposures in drinking water and its statutory authority and authorization to do so, ATSDR's continuing failure to do so provides a basis for a national class of all those negatively impacted by unstudied PFAS contamination of their drinking water supplies to bring a citizens' suit against ATSDR to force such action in the United States District Court for the District of Columbia, sixty days after ATSDR receives written notice of its failure to comply with this statutory mandate. (*See id.* § 9659.)

This letter serves as such a notice to ATSDR on behalf of our client, Dr. Arlo Paul Brooks, Jr., 92 Bella Vista Drive, Vienna, West Virginia 26105 (304-481-2946), as a representative of a national class of all persons whose primary source of residential drinking water for at least one year or more has been found to contain one or more PFAS chemicals at a concentration above the Method Reporting Limit (MRL) for such PFAS chemical(s) established by EPA for purposes of UCMR-3, excluding any such water supply where the only PFAS found above such MRL is PFOA or is a water supply falling within the scope of the *Leach* Case settlement. ATSDR has identified in Table A1 to Exhibit H attached hereto over 100 such water supplies across the country meeting this definition, including the municipal water supply for Vienna, West Virginia, which Dr. Brooks has used as his primary source of residential drinking water for many years. (*See* Ex. H Table A1.)

Dr. Brooks was one of the founding partners of Brookmar – the entity that designed, managed, and implemented the highly successful C8 Health Project. Dr. Brooks stands ready to share his unparalleled experience with ATSDR to help the Agency move forward with the type of national PFAS study that is now required. We remain hopeful that this matter can be resolved within the next sixty days without the need for pursuing any citizens' suit. We are available to meet with you to discuss and fashion a Consent Order or other document that will allow the matter to be addressed and resolved in a coordinated, uniform manner among all impacted parties, using the prior C8 Science Panel/C8 Health Project and related settlement model.

Sincerely,

Robert A. Bilott

RAB:
Encls. (Exs. A-I)
Cc: Dr. A. Paul Brooks, Jr. (w/encls.)